FILED

2009 Mar-03  PM 01:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ECONOMY PREMIER ASSURANCE COMPANY as agent of Metlife Auto and Home,** | } } } } | |
| **Plaintiff,** | } } | **CASE NO. CV 07-B-1772-S** |
| **vs.** | } } | |
| **CLW**, *a minor*; **CMW**, *individually and as next friend of* **CLW**; **CW**, *individually and as next friend of* **CLW**; and **THE ESTATE OF CHARLES HOMER WHITED**, *by and through its Executrix* **MEW**, | } } } } } } } | |
| **Defendants.** | } } | |

## MEMORANDUM OPINION

This case is before the court on a Motion for Summary Judgment filed by plaintiff Economy Premier Assurance Company ("Economy").  (Doc. 17.)[1]  Based on the submissions of the parties, and for the reasons stated below, the court finds that Economy's Motion is due to be granted.

## I.      Summary Judgment Standard

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no

---

[1]      Reference to a document number, ["Doc. ___"],  refers to the number assigned to each document as it is filed in the court's record.

genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See*

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157 (1970).  In this case, plaintiff, the moving party, has the

burden of proof at trial.  The Eleventh Circuit has stated:

> When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact:  it "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."  In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party.

*United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)(*en*

*banc*)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)(Brennan, J.,

dissenting)).  Once the moving party has met its burden, Rule 56(e) requires the non-

moving party to go beyond the pleadings and show that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324.  A dispute is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh

the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence,

and the drawing of inferences from the facts are left to the jury, and, therefore, evidence

favoring the non-moving parties is to be believed and all justifiable inferences are to be

drawn in their favor.  *See id.* at 255.  Nevertheless, the non-moving party "need not be

given the benefit of every inference but only of every reasonable inference." *Evans v. Stephens*, 407 F.3d 1272, 1284 (11th Cir. 2005)(quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)).

## II.   Case Summary [2]

### (a)   Underlying Action

The defendants in this case are parties to a lawsuit in Jefferson County, Alabama. (Doc.1, Ex. A.)  In that case, plaintiffs CLW, CMW, and CW allege that the deceased, Charles Homer Whited, sexually abused the minor CLW on July 23, 2006.  (Doc. 1, Ex. A, ¶ 5.)  After CLW's father reported the incident, Whited was arrested by the Hueytown Police Department.  (Doc. 18., p. 5; Doc. 19, Ex. C, p. 73-75.)  Whited subsequently committed suicide on October 19, 2006, the day after he was released on bail.  (Doc. 1, Ex. A, ¶ 6; Doc. 19, Ex. C, p. 75.)

CLW, CMW, and CW state four causes of action in the underlying lawsuit: tortious sexual abuse, outrage, breach of fiduciary duty, and loss of consortium.  (Doc. 1, Ex. A.)  A fifth count alleging seduction was added by amendment to the original complaint.  (Doc. 19, Ex. D.)  Whited's estate is the sole defendant and is represented by his widow, Martha Elaine Whited ("MEW"), serving as his executrix.  (Doc. 1, Ex. A.)  MEW, as executrix, requested that Economy provide her with a defense in the underlying

---

[2]    As required when determining a Motion for Summary Judgment, the court has construed all facts in the light most favorable to the non-moving parties, defendants CLW, CMW, CW, and the Estate of Charles Homer Whited.  All disputed facts are resolved in their favor, and all reasonable inferences arising from those facts are drawn in their favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L.Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

lawsuit and indemnify her for any judgment entered in that suit.  (Doc. 18, p. 12, ¶ 32; Doc. 19, Ex. I.)

**(b)    Insurance Policy**

Economy issued a Homeowners Policy (the "policy") to Whited and MEW that was in effect at the time of Whited's death.  (Doc. 1, Ex. B; Doc. 19, Ex. E-H.)  The policy provides, among other things, legal liability coverage to the insured for claims arising out of "an occurrence in which there is actual accidental property damage, personal injury or death . . . ."  (Doc. 1, Ex. B, p. 61.)  An "occurrence" under the policy is an event resulting in personal injury or property damage which was neither expected nor intended by an insured.  (Doc. 1, Ex. B, p. 61.)  Personal injury is defined in the policy to include both physical and nonphysical injuries, but physical bodily injuries resulting from intentional acts are only covered in one instance: "The only intentional injury that is covered is assault and battery committed to save a life or property."  (Doc. 1, Ex. B, p. 61.)  The legal liability coverage includes "the cost of [the insured's] defense, including investigation, lawyer's fees and court costs when someone makes a covered claim against anyone insured under this policy."  (Doc. 1, Ex. B, p. 62.)

The policy contains a number of endorsements, one of which is titled "Personal Umbrella Liability" (the "umbrella").[3]  (Doc. 1, Ex. B, p. 93-97; Doc. 19, Ex. H.)  The

---

[3]        The policy also includes an "Endorsement – Alabama Amendatory" (the "amendatory").  (Doc. 1, Ex. B, p. 87; or Doc. 19, Ex. G.)  The "amendatory" replaces the following language contained in the policy's Major Exclusion 12: "[The policy] doesn't cover the liability of any person who intentionally causes personal injury or property damage, including sexual abuse or physical abuse."  (Doc. 1, Ex. B, p. 88.)  Although the "amendatory" does not change limitations on coverage for intentional acts that are contained elsewhere in the policy,

4

umbrella's purpose is to expand coverage provided under the policy, either by adding to its liability limits or by broadening select terms.  (Doc. 1, Ex. B, p. 93; Doc. 19, Ex. H., p. 1.)  Although the umbrella purports to offer broader definitions of accident, incident, property damage, and personal injury, (doc. 1, ex. B, p. 94; doc. 19, ex. H, p. 2),  it provides coverage similar to the policy itself.  For example, under the umbrella, an "accident or incident" is "[a]nything that causes property damage, personal injury or death without your expecting or intending it."  (Doc. 1, Ex. B, p. 94; Doc. 19, Ex. H, p. 2.)  A "personal injury" means bodily injury or certain non-physical injuries.  (Doc. 1, Ex. B, p. 94; Doc. 19, Ex. H, p. 2.)  The only intentional injury covered under the umbrella is "assault and battery committed to save life or property."  (Doc. 19, Ex. H, p. 2.)

### (c)     Motion for Summary Judgment

Economy initiated this action, seeking a declaratory judgment that the policy it issued does not obligate it to provide Whited's estate with a legal defense or indemnity in the state court action.  (Doc. 1.)  On September 3, 2008, Economy moved for summary judgment, (doc. 17-19), arguing that each cause of action in the underlying suit arises out of an intentional act and, accordingly, defense of Whited's estate is excluded from coverage under the policy.  (Doc. 18, p. 15.)

The estate of Whited, through MEW, offered two points of opposition to the Motion for Summary Judgment.  (Doc. 25.)  First, MEW contended that a material question of fact remains as to whether the sexual abuse occurred or not.  (Doc. 25, p. 3.)

---

(doc. 1, ex. B, p. 89),  none of these other exclusions specifically list "sexual abuse" as an intentional act.

Second, MEW argued that Whited was incapable of acting intentionally due to mental deficiency.  (Doc. 25, p. 3-5.)

## III.   Discussion

### (a)      Scope of Insurance Policy

As a federal court sitting in diversity, this court applies the substantive laws of the forum state of Alabama.  *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942 (11th Cir. 1982). In Alabama, "[t]he issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999).  An insurance policy is ambiguous "only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *Id*. at 308-309.  A court should give the terms of an insurance policy a rational and practical construction. *Id*. at 309.  Where the terms of a contract are plain and unambiguous, "the construction of the contract and its legal effect become questions of law for the court." *Id*. at 308 (quoting *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So. 2d 853, 855 (Ala. 1991)).

In this case, the insurance policy clearly and unambiguously excludes coverage for any intentional act except for assault or batter committed to save a life or property.  (Doc. 1, Ex. B, p. 61.)  The policy's "Legal Liability Protection" section, for example, expressly states that Economy will cover the insured's legal liability resulting from "occurrences" which were neither expected nor intended.  (Doc. 1, Ex. B, p. 61.)  This same section also specifically excludes coverage for physical bodily injuries resulting from an intentional

6

act and for nonphysical injuries for which the insured could have expected the injury that resulted.  (Doc. 1, Ex. B, p. 61.)  Similarly, the umbrella specifically states that "[t]he only intentional injury that is covered [under the endorsement] is assault and battery committed to save life or property."  (Doc. 19, Ex. H, p. 2).  Thus, the legal effect of these terms is a question of law for the court to interpret.

        **(b)**      **Inferred Intent**

Alabama law dictates that the insured, in this case MEW on behalf of Whited's estate, bears the burden of proving coverage under an insurance policy.  *See Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 602 (11th Cir. 1993)(citing *Colonial Life & Acc. Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967)).  Conversely, Economy bears the burden of proving the applicability of any policy exclusion.  *See Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 310 So. 2d 200, 202 (Ala. 1975).  As stated above, Economy has argued that the policy's intentional act exclusion releases it from providing Whited's estate with a defense.  (Doc. 18, p. 15.)

As a general rule, "[w]hether an insurance company owes its insured a duty to provide a defense in proceedings is determined primarily by the allegations contained in the complaint."  *See Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005).  Facts alleged in the complaint, and not legal phraseology, determine whether an insurer has a duty to defend its insured in an action.  *Hartford Cas. Ins. Co.*, 928 So. 2d at 1012.  An insurer is obligated to defend an insured "[i]f the allegations of the injured party's complaint show an accident or occurrence within the

coverage of the policy, . . . regardless of the ultimate liability of the insured." *Id.*; *see also Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063-64 (Ala. 2003). In addition to the allegations of the complaint, the court may rely on admissible evidence to determine an insurance company's obligation to defend. *Hartford Cas. Ins. Co.*, 928 So. 2d at 1009-10. The insurer has no obligation to defend the insured only if the complaint does not allege, or the evidence does not prove, a covered occurrence. *Id.* at 1010.

Looking to the statement of facts in the underlying complaint, paragraph five unequivocally alleges that Whited sexual abused CLW. (Doc. 19, Ex. A, p. 2.) This allegation is incorporated in each count in the complaint. (Doc. 19, Ex. A, ¶¶ 7, 9, 11, & 13; Ex. D, ¶ 1.) It is therefore clear that the entire complaint is premised upon an allegation of sexual abuse, and Economy is only obligated to provide a defense to the extent that such a claim is covered under the policy.

Under the terms of a homeowner's insurance policy similar to the one at issue here, the Supreme Court of Alabama has held that an insurance company has no duty to defend or indemnify an insured in a civil action arising out of sexual abuse or molestation. *See State Farm Fire & Cas. Co. v. Davis*, 612 So. 2d 458, 464-66 (Ala. 1993). In *Davis*, the insurance policy at issue expressly excluded from coverage bodily injury which was either "expected or intended." *Id.* at 460. The Supreme Court of Alabama had previously addressed the application of such terms in contexts other than sexual abuse or molestation, finding that whether an injury was intended or expected should be determined using a subjective test:

8

"Under this subjective test, an injury is 'intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is 'expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act."

*Id*. at 460 (quoting *Alabama Farm Bureau Mut. Cas. Ins. Co. V. Dyer*, 454 So. 2d 921, 925 (Ala. 1984)).  However, for the narrow exception of cases involving the sexual abuse of children, the *Davis* court expressly rejected the subjective test in favor of one based on inferred intent.[4]  *Id*. at 464.  The court reached this conclusion after surveying case law from multiple jurisdictions, *id*. at 462-465, ultimately concluding that Alabama should conform its own case law to the majority rule: "[t]he rule applied by an overwhelming majority of courts is that, in cases involving sexual abuse of children, intent to injure is inferred as a matter of law 'regardless of claimed intent.'"  *Id*. at 463.

Economy used language in the policy it issued to Whited and MEW that is almost identical to the language used in *Davis*.  For example, under the umbrella, an "accident or incident" is "[a]nything that causes property damage, personal injury or death without your *expecting or intending* it."  (Doc. 1, Ex. B, p. 94; Doc. 19, Ex. H, p. 2 (emphasis added).)  The policy itself covers accidental personal injuries, which include nonphysical injuries, which were "*neither expected nor intended* by anyone insured by [the policy]."

---

[4]        *Davis* resolved conflicting decisions from United States District Courts in the Northern and Middle Districts of Alabama.  *Id*. at 461-62.  In *State Auto Mut. Ins. Co. v. McIntyre*, the court concluded that a subjective intent standard governs all manner of cases in which an exclusion for intentional acts existed.  652 F. Supp. 1177, 1187-88 (N.D. Ala.1987).  However, in *Horace Mann Ins. Co. v. Fore*, the court disagreed with *McIntyre* and chose to follow the rule of inferred intent.  785 F. Supp. 947, 952-956 (M.D. Ala. 1992).  The *Davis* court expressly agreed with the holding in *Fore*.  612 So. 2d at 462.

(Doc. 1, Ex. B, p. 61 (emphasis added).)  As in *Davis*, the inferred intent rule mandates that Economy has no duty to indemnify or defend Whited's estate.[5]  *See Davis*, 612 So. 2d at 465.

Because the averments of the complaint do not establish a duty to defend, the burden falls on Whited's estate to demonstrate with admissible evidence that a claim falls within the coverage of the policy.  *See Hartford Cas. Ins. Co.*, 928 So. 2d at 1012.  In MEW's sparse opposition to Economy's Motion for Summary Judgment, she has offered no competent evidence that the policy provides coverage for the claims stated in the underlying complaint.

Her primary objection to the application of the intentional act exclusion is that Whited could not act intentionally due to mental deficiency.  (Doc. 25, p. 3-5.)  Because Alabama courts generally use a subjective intent test to determine whether an intentional act exclusion applies, "whether an injury the insured inflicts upon another person is 'expected or intended' from the standpoint of the insured is ordinarily a question of fact for the jury or judge." *Davis*, 612 So. 2d 461.  But subjective intent becomes irrelevant in cases where an insured seeks legal coverage under an insurance policy for a claim arising out of the sexual abuse of a minor.  *Id*. at 464.  The actions are deemed intentional as a matter of law.  *Id*.  Here, the claims in the underlying suit clearly arise out of an allegation of sexually abuse, (doc. 19, Ex. A, ¶ 5.), and this court may infer that the alleged act was

---

[5]    Ordinarily, an insurer's duty to defend is examined independently from its duty to indemnify. *Portferfield v. Audubon Indem. Co.*, 856 So. 2d 789, 792 (Ala. 2002).  In cases involving sexual abuse of a minor, the two duties are inseparable. *Davis*, 612 So. 2d 465.

intentional.  Evidence that Whited was mentally impaired at the time of the alleged abuse does not alter that inference.

Nor does the court find merit in MEW's argument that a material question of fact exists that the sexual abuse ever occurred. (Doc. 25, p. 3.)  The obligation for an insurance company to provide a legal defense to an insured arises when the claim is asserted, irrespective of the merit of the allegations.  *See Hartford Cas. Ins. Co.*, 928 So. 2d at 1009.  Thus, the eligibility of an insured for legal liability coverage under Economy's policy is based on the nature of a claim and not its veracity.  (Doc. 1, Ex. B., p. 61.)  As discussed above, the claims asserted in the underlying action are unquestionably intentional in nature, and therefore, fall outside the coverage afforded under the policy.  This court accordingly finds that Economy is under no obligation to indemnify or defend the estate of Whited in the underlying state suit.

## IV.   Conclusion

Based on the forgoing, the court finds that Economy's Motion for Summary Judgment, (doc. 17), is due to be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

Done this 2nd day of March, 2009.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE